EDWARD CUMMINS, ETC., *v.* WM. BRADFORD, ETC.

**Descent and Distribution—Advancements—Parol Gift of Land—Failure to Make Conveyance—Improvements.**

The intestate had placed several of his children in the possession of parcels of his land and gave them some personal property, intending that this property be held and owned by them and to be accounted for in the final disposition of his estate between all of his children.

He failed to execute any kind of writing evidencing the advancements in such a way as to pass title to the land.

Held: That the appellants refused to execute deeds in order to perfect the title to the real estate given by parol to some of the children, resulted in annulling these gifts and the parties in possession are called upon to account for the rents and to be credited by the permanent improvements made by them on the property.

**Judgments—Interlocutory—No Appeal.**

There is no appeal from an interlocutory judgment which does not direct the payment of money.

**Husband and Wife—Title of Personal Property Belonging to Wife Vests in Husband.**

The intestate's first marriage was long before 1846, and at the death of the wife she was the owner of certain slaves, in her own right, prior to 1846, which under the law belonged to the husband after their marriage.

**Executors and Administrators—Suit to Settle Decedent's Estate—Cost.**

Where an administrator brings suit to settle the decedent's estate all the cost should be paid out of the general estate.

APPEAL FROM PENDLETON CIRCUIT COURT.

March 23, 1872.

OPINION OF THE COURT BY JUDGE PRYOR:

John Bradford died in the county of Pendleton, leaving his wife surviving him, and also twelve children, three of whom were by his first wife. His wife Sarah administered upon his goods, etc., and filed a petition in equity in the circuit court of Pendleton county for the settlement of her husband's estate. The intestate at the time of his death owned a large tract of land but very little personal estate. He had made during his lifetime advancements of property, real and personal, to his children, and his administrator for the purpose of having a full and complete

settlement of the estate, and an equitable division thereof, between the children, filed an amended petition, in which these advancements made are sought to be charged against them. The children of the last wife in various suits against the children by the first wife in which they claim large sums of money by way of rents for land, and hire of negroes, alleged to have been used, occupied and controlled by the children during the lifetime of the intestate, and afterwards, and for the use of which they have wholly failed to account. A suit was also instituted against Nicholas Bradford by these children (appellants) for the purpose of setting aside a deed made by his father to him for a tract of land, upon the alleged ground of his want of intellect at the date of the deed to execute such an instrument. These suits were all consolidated and in April, 1870, an interlocutory decree was rendered settling, to some extent, the rights of the parties, and the case referred to the commissioner for the purpose of making a final report and settlement between those interested in the estate. This interlocutory judgment was directly connected with, and made part of the judgment appealed from and we think, looking to the facts presented in the record, was prejudicial to the appellants. The intestate had placed several of his children in the possession of parcels of his land, and gave them some of his negroes, intending no doubt that this property should be held and owned by them and to be accounted for in the final disposition of his estate between all of his children. His aversion to some of what he conceived to be the odious and exacting laws of Congress prevented him from executing deeds to his children (as he or the donees would then be compelled to conform to those laws by stamping the deeds), or from any writing evidencing the advancements in such a way, as to pass title to the land. The appellants refuse to execute deeds in order to perfect the title to this real estate sold or given by parol to some of the children, and this refusal results in annulling these gifts or contracts and the parties in possession are called upon to account for rents to be credited by the permanent improvements made by them upon the property. The interlocutory decree rendered in April, 1870, was no doubt intended to settle finally the rights of the parties, as to rents and improvements accruing previous to the intestate's death, but the appellants

could not have appealed from this judgment as there was no order or judgment directing the payment of the money and none could have been made, until it was finally ascertained how much each one of the children was entitled to, and in order to do this the interlocutory order was necessarily a part of the final judgment between the parties, and in the opinion of this court, the chancellor could have disregarded this interlocutory order altogether upon the final hearing, if authorized by the proof. There is certainly an error in the judgment of April, 1870, as well as the final judgment so far as the same applies to the rights of John R. Bradford. He is chargeable with the rent of the land occupied by him at the time of the filing of the report for two years at $175 per year. He states that at the time he made the parol purchase of the land from his father the value of the improvements made by him was estimated at $732; that since that time he has made other improvements valued at $379, making the value of all his improvements $1,111.11; from this is to be deducted the two years' rent and would leave him entitled to $761.00 for his improvements when by the judgment of 1870 as well as the final judgment, he is allowed for these improvements $1,695.00.

John R. Bradford entered upon the land in the year 1855 and remained there until his father's death. He occupied it for more than ten years before he made the parol purchase, and in the meantime erected upon the place valuable and lasting improvements. He enjoyed the full benefit of these improvements made out of his own means and labor, and it is very questionable whether or not a party ought to be allowed for improvements under such a state of case; in fact if the several answers filed in this controversy by the appellees to the various claims for rent against them had not admitted the relation of landlord and tenant, as well as an actual renting, this court would have adopted the statement made by the witness, L. J. Bradford, coming from the intestate himself, as the basis of the settlement between the children, viz.: *"that he the intestate did not intend to charge any rents,"* and this, from the long enjoyment of the land by the appellees would have excluded also, any compensation for improvements. The pleadings and admissions of the parties, however, present the case in a different view. The failure of

the appellants to answer the cross petition of John Bradford as to the value of the improvements made by him and the alleged agreement between himself and his father not only as to their value, but that they should be accounted for, and had in fact been settled as charged in this cross petition by the parol sale of the land, entitle him to recover to that extent for his improvements. The testimony of his brothers conduces strongly to show that the rent had been accounted for annually in the division of the crops raised on the farm, and the agreement by the father to deduct from the purchase money of the land the value of these improvements, strengthens the justice of appellee's claim. If he had held this large claim for rent, against him no deduction would have been made for improvements. He is entitled, however, to only $761 instead of $1,695 for these improvements and in this estimate no rent is to be charged against him. The proof also tends strongly to show that the rents had been settled by the brothers. *William Ury, etc., v. Nicholas, etc.,* and the report and judgment thereon will not be disturbed. We are also of the opinion that the appellants should not be charged with any rent, owing or allowed for any improvements made prior to the death of their father. This is the only equitable mode in which this case as it is now presented can be disposed of.

The intestate's first marriage was long before the year 1846, and at the death of his wife she was the owner of certain slaves in her own right. This right to the negroes existed as is admitted by appellees prior to the year 1846, and if the wife was then the owner of the property or had vested interest therein the negroes under the law belonged to the husband, whether in the actual possession of the wife or not. The children claim, however, that the interest of the mother in these negroes was limited to an estate for life, with remainder to them under the will of some relative, and that, under this asserted claim by them, the father by the advice of a lawyer, compromised the matter by surrendering to them a part of the negroes. The proof of the declarations of the father upon the subject indicates, however, an intention, and a surrender of this property to the children, more because he had acquired a right to the negroes by reason of his marriage with their mother than by any recognition of a legal right on

their part. In fact, they show no other right to the negroes than that derived from the father. If by the will of the mother's relative, they were vested with an interest, such as they now assert, the production of the paper would determine a controversy about which there now exists much doubt. The children obtaining these negroes must account for their value at the date of the advancements made, that is, at the time they received the possession from the father, and are not liable for either interest or hire on their value. We have carefully considered all the exceptions made by both parties to the report of the commissioner, and find no error to the prejudice of the appellants except as herein indicated. There is a large volume of testimony in the case, and in the absence of any brief by the appellants, it has been very difficult to investigate the questions presented on the exceptions. The appellees ought to be permitted to produce the will, if they can, evidencing a title to the negroes adverse to the father, if not, they must account for the negroes as advancements, etc. As this is a suit to settle all the rights of these parties instituted by the administrator, it is but right and proper that the costs of this controversy in this court as well as the court below should be paid out of the general estate. The judgment of the court below is reversed and the cause remanded with directions to refer the case to the commissioner to make a report upon the proof taken, on the basis as fixed by this opinion in order that a judgment may be rendered as herein indicated. The parties, however, may produce the written evidence of their title to the negroes adverse to their father, if they can do so.

*Clarke, Ward, for appellants.*

*Ireland, Lee, Menzies & F., for appellee.*